J. Edward Lumbard, Jr., J.
TMs is an application pursuant to article 78 of the Civil Practice Act for a restraining order in the nature of a writ of prohibition directed against the respondent, Edgar Bromberger, Chief Magistrate of the Magistrates’ Court of the City of New York, and any Magistrate holding or *699 scheduled to hold a term in the Uptown Traffic Court, from taking any other proceeding in the matter of the charges- against petitioners for overtime parking; and for a further order in the nature of a writ of mandamus directing Edward F. Duffy, Chief Clerk of the Uptown Traffic Court, to enter pleas of guilty and accept payment of a fine in the ease of each of the petitioners.
Petitioners also move to strike new matter pleaded in the answer to the petition on the ground that it is irrelevant.
Each of the several petitioners is the recipient of a “ tag ” summons commanding the registered owner of the motor vehicle involved to appear at the Uptown Traffic Court at a designated time to answer a police officer’s charge for “ overtime parking.” On the appointed day one Shapiro presented himself to the Clerk of the court and in behalf of aE the petitioners and several other defendants, offered to plead guilty and pay the prescribed fine. Acting on instructions from the Presiding Magistrate, the Clerk rejected the plea and the fine and directed Shapiro to appear before the Magistrate. Shapiro retained counsel, appeared before the Magistrate and renewed the pleas.
The Chief Magistrate, aware of a practice on the part of certain garage owners to park their customers’ cars upon the pubEc streets, coEect the summonses and plead the owner guilty to an offense in fact committed by the garage, all without the knowledge or consent of the customer, questioned Shapiro as to the nature of his business, the source of his employment, and the manner in which he came into possession of so many summonses. On advice of counsel Shapiro refused to answer. As a consequence the Magistrate was not satisfied that he was authorized to represent the petitioners or that petitioners knew of the charges against them or that pleas of guilty were being offered in their behalf. Accordingly he rejected the pleas and directed that each petitioner be summoned to appear personally on July 9,1947.
On that day petitioners appeared, and through counsel who frankly admitted that petitioners had authorized their garage to retain him in their behalf, applied for an adjournment and refused to plead to the charges upon the ground that the Magistrate had exceeded his authority in directing the issuance of a court summons requiring the petitioners’ personal appearance before the court.
An order of prohibition may be employed to restrain a subordinate tribunal from proceeding without or in excess of its jurisdiction (Civ. Prac. Act, art. 78). It is an extraordinary remedy which lies within the discretion of the court. (Matter *700 of Culver Contr. Corp. v. Humphrey, 268 N. Y. 26, 39; Matter of Lyons v. Goldstein, 290 N. Y. 19, 22.) “ Upon an application for a writ or order of prohibition ‘ the sole question to be tried is the power of the inferior court or magistrate to do the particular act in question. ’ ” (Matter of Baltimore Mail S. S. Co. v. Fawcett, 269 N. Y. 379, 383.)
Thus the question presented is whether on the facts shown here, the Magistrate exceeded his authorized powers in rejecting pleas of guilty offered by petitioners’ ostensible representative and in directing that petitioners be summoned to appear personally before the court.
Section 102-a of the New York City Criminal Courts Act provides: “ Exclusive jurisdiction of magistrate. A city magistrate shall have exclusive jurisdiction to hear and determine any complaint alleging a violation of any provision of law, rule or regulation relating to vehicular or pedestrian traffic.”
Section 127 of the same act provides in part: ‘ ‘ Power of chief magistrate to provide additional method of payment of fine. The chief city magistrate with the consent of a majority of the city magistrates shall have the power to make rules and regulations to govern the payment of fines * * * by any person
accused of violating any provision of any law, rule or regulation relating to vehicular or pedestrian traffic, without appearing in person, except in cases of * * * any charge which
may for reasons of public policy require the personal appearance of the accused, for such period of time as shall be deemed in the public interest ’ ’.
Acting pursuant to the power granted by the above section, the then Chief City Magistrate filed a proclamation with the City Clerk in December, 1941, the applicable provisions of which state: ‘ ‘ Effective January 5, 1942 courts will permit casual parking offenders to enter a plea of guilty before the clerk of the court and to pay a fine of $4.00 to the clerk of such court in complete satisfaction for the violation with which the offender is charged. The plea may be entered and the fine paid either in person or by a representative. This privilege is given only to defendants who appear on the return day specified in the summons. ’ ’
At the outset it should be noted that section 127 of the New York City Criminal Courts Act merely confers a power to provide an additional method for the payment of a fine. It does not authorize the Chief City Magistrate to make rules or regulations governing the payment of fines by persons accused of traffic violations without appearing in person in cases which *701 for reasons of public policy require the personal appearance of the accused. Neither section 127 nor the proclamation filed pursuant thereto purport to exclude the Magistrate from his exclusive jurisdiction to hear and determine traffic violations. Under express and prescribed conditions the proclamation grants a privilege rather than a right to plead guilty through a representative. “ Representative,” as used in the proclamation, can only mean a duly authorized agent. When confronted with the case of a single individual appearing for a large number of offenders the Magistrate was clearly acting within the scope of his powers in questioning the representative as to the nature of his business, the source of his authority and the manner in which he came into possession of the summonses. “ It is an old, old principle that a duly constituted court, even in the absence of express statutory warrant, has the right ‘ to exercise so efficient a control over every proceeding in an action as to effectually protect every person actually interested in the result, from injustice and fraud, and that it will not allow itself to be made the instrument of wrong ’ ”. (Matter of Kogan v. Supreme Court, 295 N. Y. 92, 96.)
The representative’s refusal to answer the Magistrate’s pertinent questions justified a suspicion that petitioners had not authorized him to act in their behalf.
This is not a case of a magistrate rejecting a plea of guilty knowingly and understandingly made by the accused himself. Were such the case, quite a different question would be presented. (Cf. Code Crim. Pro., § 717; People ex rel. Walsh [Franco] v. Warden of Sing Sing Prison, 176 Misc. 627, 629; People v. La Barbera, 274 N. Y. 339, 342, 343.)
This is a case of rejecting a plea offered by a representative of doubtful authority. The privilege extended to traffic offenders to plead guilty through a representative is an exception to the traditional rule that a plea of guilty can only be put in by the accused himself in open court. (Cf. Code Crim. Pro., § 335.)
The obvious intent of the proclamation is to relieve the burden upon both the court and the accused incident to a personal appearance in certain kinds of traffic cases; a burden out of proportion to the gravity of the offense. It was not intended to be used as an instrument for foisting convictions upon individuals without their knowledge. All the reasons for the traditional safeguard are present here. WHien the Magistrate was not satisfied that Shapiro was authorized to represent petitioners, and had reasonable grounds to suspect that they were unaware of the entire proceedings, it was his plain duty to reject *702 the pleas and summon the defendants in order to give them an opportunity to be heard upon the merits and to assert and protect their rights. Indeed, anything less might well impair the constitutional rights of the individuals concerned. (Cf. Matter of Lyons v. Goldstein, 290 N. Y. 19, 25.)
Petitioners further assert that the respondent is ousted from jurisdiction because of bias and prejudice against garage owners. During a trial where it appeared that a garage had parked a customer’s car and left it unattended upon the public streets without the customer’s knowledge or consent, the Magistrate suggested that the city authorities and the Department of Licenses should take action to bring garages under the surveillance and regulatory powers of the municipality in order to correct the practice disclosed upon the trial. There is no showing that any of petitioners are garage owners or that respondent is biased or prejudiced against them. Upon discovering that the practice under the provisions of the proclamation was being abused in a manner against public interest it was his duty to advise those in authority to remedy the defect. (Canons of Judicial Ethics, canon 23.)
Magistrates and judges are not blind robots who function in some ivory tower where they are neither to be seen nor heard. Placed by their duties at a vantage point for observing the functions and stresses of our social order, their impartial comments on matters of public concern expressed in a temperate and reasonable spirit may be and often are of great value to all the people whom they serve. It is in keeping with the best traditions of the judiciary that in a proper ease the Magistrate should make known his views publicly, so that through the medium of a free press and the legislative process a practice warranting investigation, and perhaps requiring correction, might be dealt with and remedied according to law. To grasp at this salutary expression of opinion and warp it into disqualifying prejudice would be to fetter the Bench to, the infantile admonition of speaking only when spoken to. Such a restriction was never intended by section 15 of the Judiciary Law.
The respondent is not exceeding his authorized powers. Accordingly the application and the motion to strike are denied.
Settle order.