386

In the Matter of JEREMIAH HICKEY, Respondent, against JOSEPH P. KELLY, as Commissioner of Motor Vehicles, Appellant.

Fourth Department, December 23, 1959.

*Louis J. Lefkowitz, Attorney-General (Philip J. Fitzgerald* and *Paxton Blair* of counsel), for appellant.

*E. James Hickey* for respondent.

*Per Curiam.* The action of the Commissioner in revoking the petitioner's operator's license was mandated by the statute, upon the receipt by the Commissioner of certificates of convic-

tion, showing that the petitioner had been convicted of three speeding offenses, committed within a period of 18 months (Vehicle and Traffic Law, § 71, subd. 2, par. [c]). The petitioner seeks to attack the third conviction upon the ground that it was based upon a plea of guilty by mail in the Bronx Traffic Court, which he claims the court was not authorized to accept under section 335 of the Code of Criminal Procedure. It is firmly settled that a collateral attack upon a judgment of conviction may not be entertained in an article 78 proceeding brought to review the Commissioner's order of revocation. Under the statute, the Commissioner has neither the power nor the duty to go behind the conviction certified to him and to inquire into, or to pass upon, the validity of the conviction (*Matter of Christoff* v. *Kelly,* 8 A D 2d 687; *Matter of Banks* v. *Kelly,* 6 A D 2d 512; *La Victoire* v. *Kelly,* 5 A D 2d 548; *Matter of Gross* v. *Macduff,* 284 App. Div. 786).

If the petitioner wished to challenge the validity of the conviction, his remedy was to bring a proceeding in the court in which the conviction had been had. In his petition, the petitioner asked, as alternative relief, that he be given '' an opportunity [to] forthwith commence a *coram nobis* proceeding in Bronx City [*sic*] Traffic Court, if necessary '' but, so far as we have been advised, no such proceeding has been brought.

It is at least doubtful whether a direct attack upon the conviction in the Bronx Traffic Court would be successful. In view of the fact that there is no statutory provision applicable to New York City for pleas of guilty by mail with respect to speeding charges, although there is such a provision with respect to other traffic violations (N. Y. City Crim. Cts. Act, § 127 and proclamations thereunder), we may assume that the acceptance of petitioner's plea of guilty by mail was not authorized by statute (Code Crim. Pro., § 335, subd. 1). (But, see, Code Crim. Pro., §§ 297, 356, 424; General Municipal Law, § 371.) But even though the plea was not authorized by any statute, it may well be found that the petitioner had waived his right to be personally present, by pleading guilty by mail for his own convenience, and the conviction may accordingly be permitted to stand. This was in substance the holding in *Matter of Gross* v. *Macduff* (284 App. Div. 786, *supra*) decided in 1954. Subsequently chapter 78 of the Laws of 1955 was enacted, adding subdivision 2 to section 335 of the Code of Criminal Procedure, expressly authorizing pleas of guilty by mail with respect to certain traffic infractions. The amendment excluded New York City and Nassau County from its scope but this exclusion did not have the effect of prohibiting the courts in those parts of

the State from upholding a conviction upon the ground of waiver under the doctrine of the *Gross* case. The purpose of the exclusionary clause, as indicated in the memorandum by the cosponsor of the amendment, was to leave undisturbed the "provisions now regulating traffic violations in those municipalities." (Memorandum by the Association of Towns, Governor's Bill Jacket for L. 1955, ch. 78.) It is worth noting that this memorandum, as well as the memorandum submitted by the principal sponsor of the amendment, the Joint Legislative Committee on Traffic Violations (N. Y. Legis. Doc., 1955, No. 68, p. 40), cited the doctrine of the *Gross* case (*supra*) with approval. It is thus at least arguable that, even in a case in which a plea of guilty by mail is not authorized by subdivision 2 of section 335, the defendant may be held to have voluntarily waived the requirement of subdivision 1 by his plea, and the conviction may accordingly be allowed to stand. (See, also, *People* v. *La Barbera,* 274 N. Y. 339; *People ex rel. Walsh* v. *Warden,* 176 Misc. 627.) In this situation, the Commissioner of Motor Vehicles was certainly not called upon to speculate as to whether the petitioner's conviction in the Bronx Traffic Court would or would not stand if it were attacked in that court.

As to the other points raised by the petitioner, it is enough to note that the renewal of his operator's license, during the pendency of a stay in the review proceeding, did not affect the validity or effectiveness of the Commissioner's order of revocation (*Matter of Colonial Liq. Distrs.* v. *O'Connell,* 295 N. Y. 129) and that section 335-a of the Code of Criminal Procedure had been fully complied with by the printing of the statutory warning on the traffic summons.

The order appealed from should be reversed and the proceeding dismissed.

GOLDMAN, J. (dissenting). The principal question posed by this appeal is whether, under the fact situation presented in this case, an administrative officer knowingly may disregard legislative mandates and a final judicial decree by a court of competent jurisdiction.

At first blush, the problem before us appears to be one upon which the courts of this State have frequently written in recent years. Involved in this appeal is petitioner-respondent's operator's license which was revoked by the Commissioner for three alleged speeding convictions within 18 months. The alleged third offense was committed in Bronx County and it is conceded that the appearance by the petitioner, the plea and the payment of the fine, all in Bronx Traffic Court, were made by mail. Upon receipt of the alleged certificate of conviction for the third

offense, the Commissioner sent petitioner notice of revocation of his license. Petitioner then commenced an article 78 proceeding which was duly heard at Special Term and resulted in an order adjudging the Commissioner's revocation void. No appeal was taken by the Commissioner from that order; the time to do so has long since expired and that order remains in full force and effect. The basis for the order was that the certificate of conviction of the Bronx Traffic Court for the alleged third offense failed to show that the petitioner had entered a plea of guilty or any other plea.

From this point, the record before us presents a situation unlike that of any previously recorded case brought to the attention of this court. After the order of Special Term, and in complete disregard of it, Commissioner upon his own initiative proceeded to secure a second certificate of conviction from the Bronx Traffic Court. Notwithstanding the fact that on its face this second certificate, in handwriting inserted in the printed form at three different places, showed that the defendant appeared " by Mail ", that the plea was " Guilty-by Mail ", and that the sentence was " $10 Paid by Mail ", all in violation of section 335 of the Code of Criminal Procedure, the Commissioner issued a second certificate of revocation of petitioner's operator's license.

Petitioner then instituted a second article 78 proceeding and it is the Special Term's order annulling the Commissioner's revocation which is the subject of this appeal. Special Term bottomed its order on two grounds. Preliminary to a consideration of this problem it may be well to dispose of the first ground. It was argued, and was so held at Special Term, that since the Commissioner's order of revocation was directed against a license which had expired and, therefore, was no longer in existence at the time the order was issued, the order of revocation was ineffectual as against the renewal license issued to petitioner. I am not impressed with the argument thus made. (Cf. *Matter of Colonial Liq. Distrs.* v. *O'Connell,* 295 N. Y. 129, motion for reargument denied 295 N. Y. 825; *Matter of Ryan* v. *Macduff,* 286 App. Div. 1135, appeal dismissed and motion for leave to appeal denied 309 N. Y. 1024, 1035.) It is upon my concurrence with the second ground of Special Term's determination that I part company with the prevailing members of this court.

Involved in this appeal is the operator's license of an individual whose livelihood depends upon his right to drive an automobile: " A license to operate an automobile is of tremendous value to the individual and may not be taken away except

by due process. If in the instant case it may be done loosely and informally and without regard to the statutes in such case made and provided, then it may be done in any case, and every automobile driver in the State will be at the mercy of the commissioner and his assistants. However much we may recognize the need for the rightful exercise by the commissioner of his duties in his laudable effort to prevent unsafe driving on the highways, it would be a dangerous step indeed if we permitted him to follow any loose practice formulated by him, regardless of the law." (*Matter of Wignall* v. *Fletcher,* 303 N. Y. 435, 441.)

I am mindful of the rule enunciated by this court that a conviction may not be attacked collaterally in an article 78 proceeding by reason of failure to comply with section 335 of the Code of Criminal Procedure (*Matter of Christoff* v. *Kelly,* 8 A D 2d 687 and cases therein cited). With this principle of law I have no quarrel. I am also mindful of the doctrine that where there are involved mandatory suspensions and revocations under paragraph (c) of subdivision 2 of section 71 of the Vehicle and Traffic law: "There is no requirement for a hearing or the making of findings. (Cf. *Matter of Schayes* v. *Macduff,* 285 App. Div. 1220.) In such event the reasonableness of the commissioner's action may be reviewed but the question before the court is whether the action was arbitrary or capricious (*Matter of Arcuri* v. *Macduff,* 286 App. Div. 17, 22, 23; decision vacated on other grounds 1 A D 2d 733)." (*Matter of Drasin* v. *Kelly,* 6 A D 2d 453, 455.)

The reason for the rule is explained in *Matter of Banks* v. *Kelly* (6 A D 2d 512, 514): "The Commissioner of Motor Vehicles on proof of three convictions for speeding on the part of an operator of a motor vehicle must revoke his license (Vehicle and Traffic Law, § 71, subd. 2, par. [c]) if the commissioner is satisfied section 335-a of the Code of Criminal Procedure and subdivision 6 of section 71 of the Vehicle and Traffic Law, which have to do with the warning required to be given to a violator, have been complied with. Apart from being satisfied that compliance has been had with the aforesaid statutes, the commissioner under the circumstances of this case was not required before taking the action complained of herein to make an independent investigation of each conviction."

Once the Commissioner had notice that he had acted in error in revoking the license upon receipt of the first alleged certificate of conviction and proceeded to secure a second certificate, he no longer could rely on the immunity from collateral attack that was his by reason of the principle laid down in *Matter of Christoff* v. *Kelly* (8 A D 2d 687, *supra*). The reasoning of that

case which properly insulated him from attack no longer was applicable. The great burden which would be imposed upon the Commissioner, if he were required to investigate the validity of every certificate of conviction in the first instance, no longer exists in a situation like the one which confronts us. With knowledge of the defects of the first certificate, as specifically set forth by Special Term by a final order in the first article 78 proceeding, no logical reason remains for the automatic revocation mandatory under section 71 (subd. 2, par. [c]) of the Vehicle and Traffic Law. Of necessity, the Commissioner was compelled to examine the second certificate to satisfy himself that the error contained in the first was not duplicated in the second. Thereafter, the Commissioner necessarily was required to make an independent investigation which disclosed that the conviction rested upon a direct violation of law by the Bronx Traffic Court. This investigation would have disclosed to him that in addition to violation of section 335 of the Code of Criminal Procedure there was a violation of section 127 of the New York City Criminal Courts Act dealing with City Magistrates' Courts which specifically required personal appearance. (Cf. *Matter of Abrams* v. *Bromberger,* 19 Misc 2d 698; *Matter of Feig* v. *Bromberger,* 19 Misc 2d 703.)

No longer was the Commissioner an automaton in such a situation. He was then properly chargeable with the type of responsible action which the law should impose upon the acts of one of the most important of our State officials. Under such circumstances, he certainly must be charged with knowledge of section 335 of the Code of Criminal Procedure, a statute specifically affecting the operation of automobiles. Concerned as we should be about the practical necessity of not hobbling the administrator by rigid rules of law, we should be equally concerned about extending the powers of an official acting under legislative directive, to the point where they result in such obvious arbitrary, capricious and unreasonable action.

There is no satisfactory proof in the record before us that the second certificate of conviction is right and the first certificate upon which the prior effective order of Special Term rests is wrong. As was said in *People* v. *Duell* (1 N Y 2d 132, 134–135):

" The licensing system is the keystone of all the legislative safeguards deemed necessary to protect the public against death or mutilation. Hence a license or a certificate of registration is valuable. The Legislature intended by section 335-a of the Code of Criminal Procedure to protect the rights of persons possessing such a license or certificate,

"Representation by counsel does not relieve the magistrate of the duty of complying with the mandate of the statute. (*Matter of De Lynn* v. *Macduff*, 305 N. Y. 501; *People* v. *Grogan*, 281 App. Div. 706.) But the intendment of this legislative mandate is the accomplishment of a meaningful act, rather than the performance of a meaningless ritual." (Cf. *Matter of Hubbell* v. *Macduff*, 2 N Y 2d 563; *Matter of Astman* v. *Kelly* 2 N Y 2d 567.)

I cannot agree with the argument that petitioner waived the express mandate of section 335 of the Code of Criminal Procedure requiring personal appearance. The Legislature has said in so many words that where the population exceeds one million persons personal appearance may not be waived. The public policy of this State was thus formulated by that legislation. "The public policy of this state when the legislature acts is what the legislature says that it shall be." (*Messersmith* v. *American Fid. Co.*, 232 N. Y. 161, 163.) Consent may not confer jurisdiction where none exists "especially against the prohibitions of a law". (*Oakley* v. *Aspinwall*, 3 N. Y. 547, 552.) Although parties in a civil action, under some circumstances, may stipulate away statutory or even constitutional rights it has been consistently recognized that no rights may be waived that confer jurisdiction where it is lacking or which offends against a sound public policy which promotes the general interests of justice. (*Matter of City of Rochester*, 208 N. Y. 188, 192; *Matter of New York, Lackawanna & Western R. R. Co.*, 98 N. Y. 447, 453.)

Practical necessity requires that we afford to all administrative agencies the greatest latitude effectual to the administration of their offices but such latitude, in my opinion, may not be so great as to deny, without consideration of the unusual circumstances in this case, due recognition to an order or mandate of a court of competent jurisdiction. In *Mine Workers* v. *Eagle-Picher Co.* (325 U. S. 335) where the National Labor Relations Board procured a court order of enforcement of its own order and subsequently sought to vacate a portion of the decree dealing with the award of back pay, the court, in denying the relief, stated at page 340: "Finality to litigation is an end to be desired as well in proceedings to which an administrative body is a party as in exclusively private litigation. The party adverse to the administrative body is entitled to rely on the conclusiveness of a decree entered by a court to the same extent that other litigants may rely on judgments for or against them."

The court further pointed out at page 343: "We are dealing here with a decree of a court entered in a judicial proceeding. The term at which the decree was entered has long since expired.

The only recourse open to the Board is the same that would be open to any other litigant, namely, a bill of review."

A serious argument may well be raised that in the circumstances disclosed by this record the conduct of respondent-appellant was arbitrary and capricious. Uncertainty clearly exists whether the first or second certificate accurately sets forth the correct disposition of petitioner's case: "In view of this uncertainty, which clearly exists, this case comes within the rule which requires a court to give to the record ' " that construction which operates in favor of life or liberty " ' *(People ex rel. Carollo v. Brophy,* 294 N. Y. 540, 545)." *(Matter of Moore v. Macduff,* 309 N. Y. 35, 43.)

The order should be affirmed.

Present — McCurn, P. J., Williams, Bastow, Goldman and Halpern, JJ.

All concur, except McCurn, P. J., and Goldman, J., who dissent and vote for affirmance in opinion by Goldman, J., in which McCurn, P. J., concurs.

Order reversed and proceeding dismissed, without costs of this appeal to either party.